3:26-mj-00296

DISTRICT OF OREGON, ss: AFFIDAVIT OF JASON T. BUELT

**Affidavit in Support of a Criminal Complaint and Arrest Warrant**

I, Jason T. Buelt, being duly sworn, do hereby depose and state as follows:

**Introduction and Detective Background**

1. I am a Detective with the Beaverton Police Department and have been so employed as a Police Officer for over 27 years. I am currently assigned to the Westside Interagency Narcotics Team ("WIN") in Washington County, Oregon, and I am also a Task Force Officer ("TFO") with the Federal Bureau of Investigation ("FBI") and have been granted authority to investigate violations of Title 21 of the United States Code, which includes violations involving the distribution and possession with intent to distribute controlled substances. My duties include, but are not limited to, the investigation of crimes relating to the violation of the Uniform Controlled Substance Act and include dismantling/disrupting Drug Trafficking Organizations ("DTO's") and Money Laundering Organizations ("MLO's").

2. My formal law enforcement training includes a Basic certification received from the Oregon Department of Public Safety Standards and Training ("DPSST"). I currently hold an Advanced Law Enforcement certification through "DPSST." I have over 5,300 training hours of additional training through the Beaverton Police Department. The training from "DPSST" and the Beaverton Police Department included, but was not limited to, narcotic investigations, testing of suspected controlled substances by scientifically accepted methods, and narcotic identification.

3. I have received specialized training in narcotics investigations including narcotics identification, surveillance techniques, and handling and packaging of evidence. This training had been provided to me by "DPSST," the United States Drug Enforcement Administration ("DEA"), and in-service training through the Washington County Sheriff's Office. Included in my training and experience, I have training specific to the identification and investigation of persons involved in the use, sale, distribution, and manufacturing of controlled substances including, but not limited, to methamphetamine, heroin, fentanyl, cocaine, MDMA, marijuana, and other controlled substances.

4. I have been personally involved in numerous state and federal investigations and arrests involving violations of the Uniform Controlled Substance Act as outlined in Title 21 of the United States Code, to include violations of 21 U.S.C. § 841(a)(1)(A) and 846, to-wit: the Distribution and Possession with Intent to Distribute a Controlled Substance and Conspiracy to Distribute and Possess with Intent to Distribute a Controlled substance. In many of these investigations suspected controlled substances were confiscated, field tested, and then a confirmatory test was performed by the Oregon State Crime Laboratory which confirmed the suspected identify of the controlled substance. These investigations have included the use of confidential sources ("CS's"), sources of information ("SOI"), toll records, physical surveillances, controlled purchases, buy-busts (situations where controlled substances are ordered and the person making the delivery is then arrested), and the execution of search warrants. These investigations have also included possession with intent to distribute, and distribution of controlled substances. These investigations have resulted in numerous state and/or federal prosecutions of individuals who have possessed, and or distributed controlled

substances, as well as the seizure of those illegal drugs and the proceeds from the sale of those illegal drugs.

5. I submit this affidavit in support of a criminal complaint and arrest warrant for **Jesus Burgos-Valdez,** date of birth xx/xx/1995, hereinafter referred to as **Burgos-Valdez**, and **Peter Baltazar-Francisco,** date of birth xx/xx/2000, hereinafter referred to as **Baltazar-Francisco**, for engaging in a Conspiracy to Distribute and Possess with Intent to Distribute 400 grams or more of a Mixture and Substance containing Fentanyl, a Schedule II controlled substance; and, Possession with Intent to Distribute 400 grams or more of a Mixture and Substance containing Fentanyl, a Schedule II controlled substance, all in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846.

6. This affidavit is intended to show only that there is sufficient probable cause for the requested complaint and arrest warrants and it does not set forth all my knowledge about this matter. The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, interviews of witnesses, a review of records related to this investigation, communications with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience.

## Statement of Probable Cause

7. This affidavit is based on a joint investigation conducted by the Westside Interagency Narcotics Team (WIN) and the Portland-based Drug Enforcement Administration (DEA), hereinafter referred to collectively as "Investigators."

8. During the end of September 2026, a Confidential Source (CS) notified Investigators about a Hispanic male, subsequently identified as **Burgos-Valdez**, who was selling fentanyl in and around the Washington County, Oregon area and using a phone number identified as xxx-xxx-8826.[1] Over the past month WIN Investigators have completed three controlled buys utilizing the CS where, under the direction of Investigators, the CS called and texted the xxx-xxx-8826 number and ordered various quantities of fentanyl, which the Hispanic male, subsequently identified as **Burgos-Valdez** then delivered. Each of these controlled buys was conducted under law enforcement direction and surveillance. As a result of the controlled buys and surveillance, WIN Investigators learned that second Hispanic male, subsequently identified as **Baltazar-Francisco**, was working in tandem with **Burgos-Valdez** to distribute fentanyl.

9. WIN Investigators subsequently obtained a state search warrant for real time geolocation (GPS) information for the phone number ending in 8826. The warrant was signed and authorized by Washington County Circuit Court Judge Elizabeth Lemoine on September 28, 2026. The GPS location information provided Investigators with an alert whenever the phone either left or came back into the greater Portland, Oregon metropolitan area, as well as the greater Washington County, Oregon area.

---

[1] The identity of the CS is known to me; however, to preserve their anonymity and safety their name is redacted from this criminal complaint affidavit. CS has convictions for Delivery of a Controlled Substance (DCS) methamphetamine, Theft I, Theft II, and Driving Under the Influence of Intoxicants (DUII). CS was not threatened, coerced, or made any promises for their cooperation. CS provided information to the Investigators in exchange for monetary compensation.

10. During the first week of October 2026, the CS notified WIN Investigators that **Burgos-Valdez** was out of fentanyl. WIN Investigators conducted surveillance at **Burgos-Valdez's** residence and followed **Burgos-Valdez** and **Baltazar-Francisco** to a random neighborhood in Vancouver, Washington. WIN Investigators observed that **Baltazar-Francisco** was the driver of the vehicle and **Burgos-Valdez** was in the front passenger seat. **Baltazar-Francisco** and **Burgos-Valdez** stayed in the neighborhood for approximately five minutes before heading back to **Burgos-Valdez's** residence without making any stops.

11. During the surveillance of **Burgos-Valdez** and **Baltazar-Francisco**, the real time GPS location for **Burgos-Valdez's** phone number ending in 8826 was consistent with **Burgos-Valdez's** movements.

12. WIN Investigators then observed **Burgos-Valdez** and **Baltazar-Francisco** leave **Burgos-Valdez's** residence and travel to an apartment complex in Washington County, Oregon where they stayed for a very short time which based on my training and experience is indicative of a drug delivery.

13. WIN Investigators then followed **Burgos-Valdez** and **Baltazar-Francisco** to another residence in Washington County, Oregon. During the Summer of 2026, WIN Investigators were already investigating this specific residence based upon allegations that the residents were using it in furtherance of the unlawful distribution of fentanyl and methamphetamine. Additionally, residents of this address have called for medical assistance on two separate occasions in 2026 for drug overdoses that have occurred at this residence. In 2026, Beaverton Police Officers also stopped a vehicle in front of this residence and found methamphetamine inside the vehicle.

14. WIN Investigators then followed **Burgos-Valdez** and **Baltazar-Francisco** back to **Burgos-Valdez's** residence after they left the second Washington County residence.

15. During the last week of October 2026, the CS notified WIN Investigators that **Burgos-Valdez** was going to be "re-upping" his supply of fentanyl in the near the future.

16. On October 25, 2026, WIN Investigators were conducting surveillance at **Burgos-Valdez's** residence and observed **Baltazar-Francisco** arrive at **Burgos-Valdez's** residence in a white Chevy Silverado Z71 truck. WIN Investigators then observed **Burgos-Valdez** enter the front passenger seat of the white Chevy Silverado Z71 truck and depart from the residence.

17. WIN Investigators followed **Burgos-Valdez** and **Baltazar-Francisco** as they entered Washington State.

18. WIN Investigators waited for **Burgos-Valdez** and **Baltazar-Francisco** to return to Oregon, which they did. After the white Chevy Silverado Z71 re-entered Oregon, Investigators followed the vehicle and, believing there was fentanyl inside, conducting a traffic stop on the vehicle on westbound Highway 26 near S.W. Cedar Hills Boulevard, in Washington County Oregon. **Baltazar-Francisco** was the driver of the vehicle and **Burgos-Valdez** was sitting in the front passenger seat of the vehicle.

19. Following the traffic stop, **Burgos-Valdez** and **Baltazar-Francisco** were detained and both were advised of their constitutional *Miranda* Rights in Spanish by DEA Task Force Officer Josh Betonte, who I know to be fluent in Spanish. Both **Burgos-Valdez** and **Baltazar-Francisco** acknowledged understanding their rights.

20. **Baltazar-Francisco** consented to having a narcotics detection K-9 sniff around the truck and also consented to a search of the truck. Washington County K-9 Deputy Douglas deployed his Narcotics K-9 Blake around the white Chevy Silverado Z71 truck and reported Blake alerted to the presence of controlled substances inside of the white Chevy Silverado Z71.[2]

21. Investigators searched the white Chevy Silverado Z71 and located a “kilo” brick-like package inside of a white plastic grocery bag underneath the front passenger seat where **Burgos-Valdez** was sitting. A photograph of the seized “kilo” brick appears below:



22. Investigators later field-tested a sample of the suspected fentanyl from the “kilo” brick-like package using Detectachem and the test was positive for fentanyl, a Schedule II controlled substance. I have found such field-tests to be reliable with subsequent forensic

[2] Blake is a 5-year-old labrador. Deputy Douglas and Blake are a certified narcotic detection team through the Oregon Police Canine Association (OPCA) with a certification date of October 21, 2026. Blake and Deputy Douglas have participated in 172 hours of narcotic detection school. They will continually train a minimum of 16 hours a month. Blake is trained to locate and alert on the odor of Cocaine, Methamphetamine, Heroin, and Fentanyl. Blake is a passive alert dog which means his final response is to freeze and stare as a passive alert but will sometimes scratch at the source of odor.

analysis repeatedly confirming the field-test results. The “kilo” brick-like package containing fentanyl that was seized weighed approximately 1,006 grams.







<u>**STATEMENTS FROM BURGOS-VALDEZ**</u>

23. **Burgos-Valdez** was interviewed in Spanish by a Spanish speaking Investigator and said he has been selling fentanyl for six months and sells $50 bags of fentanyl and $100 bags of fentanyl. **Burgos-Valdez** said he was sent to the United States by someone in Sinaloa, Mexico to sell fentanyl. **Burgos-Valdez** said the most fentanyl he has sold at one time was a quarter (¼) pound. **Burgos-Valdez** admitted to picking up the “kilo” of fentanyl in Washington State. **Burgos-Valdez** said when he needs more product he travels to Washington State. On two different occasions during the interview, **Burgos-Valdez** tried to minimize his involvement by telling Investigators he was supposed to deliver the “kilo” of fentanyl he picked up today to some other house.

24. **Burgos-Valdez** admitted to Investigators that he had an AR-15 rifle and a 9mm pistol at his residence and they were on the bed. **Burgos-Valdez** consented to Investigators searching his residence at XXX North 15th Avenue in Cornelius, Washington County, Oregon. **Burgos-Valdez** told Investigators his bedroom would be open, but his roommate's bedroom would be locked. **Burgos-Valdez** said he traded fentanyl for both the rifle and the pistol. **Burgos-Valdez** denied carrying the weapons while he completed drug transactions.

**STATEMENTS FROM BALTAZAR-FRANCISCO**

25. **Baltazar-Francisco** was also interviewed in Spanish by a Spanish speaking Investigator and said he has been working with **Burgos-Valdez** for six months and gets paid $50 to $60 a day to drive **Burgos-Valdez** around to sell fentanyl and estimated he has made roughly $1,000. **Baltazar-Francisco** said he has been up to Washington State on two occasions with **Burgos-Valdez** to pick up fentanyl. **Baltazar-Francisco** said he was supposed to get $500 from **Burgos-Valdez** for driving up to Washington State on this trip. Baltazar-Francisco further admitted that he will remit money to Sinaloa, Mexico to assist in the purchase of the fentanyl for **Burgos-Valdez**.

**SEARCH OF BURGOS-VALDEZ'S RESIDENCE**

26. Investigators went to **Burgos-Valdez's** residence and located the following inside **Burgos-Valdez's** bedroom:

- a Palmetto State Armory brand AR-15 rifle, with scope and sling (the firearm was not loaded);
- a Springfield 9mm handgun, the firearm was reported stolen and it was loaded, but there was not a round in the chamber;

- Multiple digital scales, with apparent drug residue on them; money remitter receipts; and, drug records found in various dresser drawers and on a table; and,
- Kilogram style drug packaging material found within a cardboard box that was underneath a table.

Photographs of some of the items appear below:






///

///

///



27. I am very familiar with how fentanyl dealers operate, and I know that fentanyl traffickers regularly sell both fentanyl powder and counterfeit prescription pills manufactured with fentanyl, a Schedule II controlled substance. I know that fentanyl powder is typically a white to off-white powder. Since different weights of powdered fentanyl sell for different amounts, I know that drug dealers selling fentanyl powder will often either prepackage the fentanyl in various predetermined weights for sale or possess a scale to weigh the amount of powder fentanyl they are selling. I also know drug dealers selling powdered fentanyl, which they will often possess in larger amounts, will often possess additional packaging materials to repackage the drugs they are selling to their customer. Depending on their level of addiction, I know that a user of powdered fentanyl will typically buy it in quantities of less than a gram to several grams at a time and then use it in quantities of much less than 1/10 of a gram. I know that dealers of powdered fentanyl will often buy fentanyl in larger quantities and then break off

and sell it in smaller qualities. I know that a person possessing more than 400 grams of fentanyl powder does not possess it for personal use but rather such a quantity clearly indicates that it is possessed for purposes of further distribution.

**Conclusion**

28. Based on the foregoing, I have probable cause to believe, and I do believe, that **Jesus Manuel Burgos-Valdez** and **Peter Anderson Baltazar-Francisco** have committed the federal felony offenses of Conspiracy to Distribute and Possess with Intent to Distribute 400 grams or more of a Mixture and Substance containing Fentanyl, a Schedule II controlled substance and Possession with Intent to Distribute 400 grams or more of a Mixture and Substance containing Fentanyl, a Schedule II controlled substance, all in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. I therefore request that the Court issue a criminal complaint and arrest warrant for **Jesus Manuel Burgos-Valdez** and **Peter Anderson Baltazar-Francisco**.

///

///

///

29. Prior to being submitted to the Court, this affidavit, the accompanying complaint, and the arrest warrant were all reviewed by Assistant United States Attorney Scott Kerin. AUSA Kerin advised me that in his opinion the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

*By phone pursuant to Fed R. Crim. P. 4.1*
Jason T. Buelt
Detective and FBI Task Force Officer
West Side Interagency Narcotics Team

Sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at 5:10 p.m. on October 26, 2026.

HONORABLE JEFFREY ARMISTEAD
UNITED STATES MAGISTRATE JUDGE